ANA CARMEN PIAZZA MARESCHI, Appellant, *v.* THE REGIS-TRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1312. Submitted May 3, 1954.—Decided May 11, 1955.

*Luis López de Victoria* for appellant. The Registrar appeared by brief.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Alejandro Antonio Piazza Olaya, as well as his brother and each one of his four sisters, acquired by intestate hereditary right from his father Alejandro Piazza Massini—who died on August 20, 1949—an undivided one-sixth interest in a 200-cuerda farm located in the ward of Aguas Blancas of Yauco. The farm was recorded in the Registry in the name of the six heirs in undivided joint ownership. At the time of the death of his father, Alejandro Antonio Piazza Olaya was married for the first and only time to Cándida Cintrón Luca.

On October 3, 1949, Piazza Olaya executed an open will, in which he bequeathed, in its entirety and without limitation, the free third of all his property to his niece, Ana Carmen Piazza Mareschi, 19 years old, and he designated as his sole and universal heirs, his only daughter, Eba Malta Piazza Cintrón, and his wife, Cándida Cintrón Luca, in the widow's usufructuary quota pursuant to the law. He appointed his brother Américo Piazza Olaya as his universal executor, fixing a term of one year to make the inventory and to liquidate, divide, and adjudicate his property, without making any specific designation.

Alejandro Antonio Piazza Olaya died in Yauco on February 5, 1953.

On March 8, 1954, legatee Ana Carmen Piazza Mareschi presented to the Registrar, respondent herein, a certified copy of the death certificate of her predecessor, and a copy of the open will executed by him, as well as other documents, and requested the Registrar to record in her own name one third of the undivided one-sixth interest which appeared recorded in the name of the testator as his hereditary right in the aforesaid 200-cuerda farm, and two-thirds in the name of Eba Malta Piazza Cintrón, known as Eva Marta Piazza

Cintrón, without prejudice to the usufructuary quota which corresponded to the widow, Cándida Cintrón Luca.

On March 16, 1954, the Registrar recorded the will as to such condominium but "subject to the result of the liquidation of the conjugal partnership existing between the deceased and the widow Cándida Cintrón Luca. The property appears without any lien."

Feeling aggrieved by that part of the Registrar's note that subjects the registration "to the result of the liquidation of the conjugal partnership," Ana Carmen Piazza Mareschi has taken this administrative appeal. She prays for the reversal of the Registrar's decision on the ground that she considers such condition to be contrary to law since the recorded property belonged separately to her predecessor and not to the conjugal partnership which was dissolved by his death, since it was acquired by lucrative title and not for a valuable consideration during the marriage.

The Registrar, on his part, believes that the condition which he states in his ruling "would protect certain community rights frequently attached to the separate property of the spouses" mentioning as such, "the useful expenses made and buildings constructed on the separate property of either spouse," which are regarded as community property pursuant to § 1304 of the Civil Code, 1930 ed. Hence, he maintains that "the condition herein stated would serve as a cautionary notice to a third party to the effect that if he makes any contract in connection with this condominium of a separate character, he does so with the knowledge that the conjugal partnership has not been liquidated and that there is a possibility that the separate property may have improvements, buildings or expenses of a community character subject to the liquidation."

 As may be seen from the foregoing, the hereditary right, that is, the transfer of rights and obligations from the predecessor to his heirs—which takes place by reason

of and from the very moment of his death—was recorded. In *García* v. *Registrar of Guayama*, 27 P.R.R. 575, where the property was regarded as *community property*, notwithstanding the fact that it was recorded in the name of the husband alone—because it was acquired during marriage and it was not stated that it was not for a valuable consideration—we held that since the registration in question was merely one of hereditary right and the names of the heirs appeared from a ruling of the court on a declaration of heirship, the registration lay since "taking into account what appears from the registry, the Registrar could limit himself to recording what the registry shows to belong to the ancestor of the applicants, that is, one-half of the properties, the record being subject to the result of the liquidation of the conjugal partnership," in view of the fact that since it was a mere transfer of hereditary rights, "all that belonged to the deceased now belongs to his heirs and to make the record show that fact it is not an indispensable requisite that the conjugal partnership be liquidated."

In *Alameda* v. *Registrar*, 76 P.R.R. 216, in which the Registrar, respondent herein, recorded the cancellation of a mortgage—which had been constituted on *conjugal property* and cancelled after the divorce was decreed without having first liquidated the conjugal partnership—but subject "to the result of the liquidation of the conjugal partnership . . ." we set aside the Registrar's decision as to the latter condition and made an analysis of the state of law created by our Civil Code with regard to the dissolution, liquidation, and adjudication of community property, stating that those provisions were designed to protect the spouses' rights rather than the creditors.

This case does not deal, like the *Alameda* case, *supra*, with an act of *alienation* of community property—cancellation of a mortgage—executed by the divorced spouses by mutual agreement, without having first made the liquida-

tion of their community property. It deals with the transfer of the predecessor's rights and obligations to his heirs in terms of his own property. In the *Alameda* case, the community property represented by the mortgage credit was changed, in clear law, into another community property, represented by the payment by virtue of which the cancellation was made. Nor does this case deal with the registration of the hereditary right of the assigns represented *by property* belonging to the *conjugal partnership* dissolved by the death of the predecessor, like in the *García* case, *supra*, where, as we have seen, the registration of the hereditary rights which were conveyed on the testator's death was subject to the result of the liquidation of the conjugal partnership dissolved by his death.

It is to be noted that just as the law requires that the liquidation of the conjugal partnership be made in order to determine whether there remain any community net earnings subject to partition among the heirs of the deceased and the surviving spouse, it likewise provides for the partition of the property among the heirs, there being included among them the surviving spouse—as forced heir— in the legal usufructuary quota. It is in the light of § 1319 of the Civil Code, 1930 ed., which provides: "After the debts, charges and obligations of the partnership have been paid, the capital of the husband and of the wife shall be liquidated and paid, in so far as the inventoried estate may reach," in relation to § § 1317 [1] and 1324, [2] that we

---

[1] Section 1317 (1930 ed.):

"The inventory shall include specifically for the purpose of collating them the sums which, having been paid by the conjugal partnership, are to be deducted from the capital of the husband or of the wife.

"The amount of the gifts and alienations which must be considered illegal or fraudulent, in accordance with § 1313, shall also be brought to collation."

[2] Section 1324 (1930 ed.):

"With regard to making the inventory, rules for the appraisal and sale of the property, and all other particulars, not expressly fixed in this chapter, the prescriptions of article V, chapter VI, title III, book third, shall be observed."

must determine whether, upon making an inventory of the separate property of each spouse at the time of the liquidation of the conjugal partnership, and it being possible that this property be affected by the result of the liquidation, the Registrar should state in the record, as he has done here, the condition imposed by him that the hereditary right is subject to the result of the liquidation of the conjugal partnership.

The General Directorate of Registries has stated that in dealing with property acquired by one of the spouses during marriage for a good consideration—as by inheritance in this case—the dissolution of the conjugal partnership does not alter the capacity of the acquiring party to freely dispose of it, nor does it imply that the liquidation of the partnership is a prerequisite to the adjudication of the property. Decisions of May 30, 1933, VII *Jurisprudencia Registral* 392; of April 24, 1885, II *Jurisprudencia Registral* 210; of June 15, 1892, II *Jurisprudencia Registral* 780; of January 4, 1893, II *Jurisprudencia Registral* 844.

On the other hand, it has equally stated that the useful expenditures made for the benefit of the separate property of either one of the spouses by means of advances made by the conjugal partnership, or by the industry of the husband or wife, are community property, according to the provisions of § 1404 of the Spanish Civil Code (§ 1304 of our Civil Code, 1930 ed.) and, because they are so characterized, the liquidation of the conjugal partnership would be necessary upon proof that such improvements exist and that they were made during the marriage with income which did not belong separately to either spouse. Decisions of May 5, 1908, IV *Jurisprudencia Registral* 329; and of May 30, 1933, VII *Jurisprudencia Registral* 392. However, in those very decisions it has been indicated that in order not to deprive the surviving spouse of his or her ownership rights in regard to his or her separate property, even after the partnership

is dissolved, it must be proved that those useful expenditures were actually made during the marriage, and *such expenditures must be fully justified and not based on mere conjectures.*

It was equally stated therein, in connection with paragraph 2 of the aforesaid § 1404 of the Spanish Civil Code, that the rule established therein which declared that any building constructed during the marriage on land belonging to one of the spouses was community property, but which provided that the value of the land shall be paid to the spouse owning the same, is an exception to the right of accession provided by § 358 of the Spanish Civil Code (§ 294 of our Civil Code, 1930 ed.), and that as a result of said exception *if there is proof of the existence* of buildings constructed during the marriage and which, for the purpose of the registry, are regarded community property, the surviving spouse, former owner of the land, can not freely dispose of the property *until after the liquidation of the conjugal partnership* and the corresponding adjudication of property is made in favor of the former. Decisions of October 19, 1900, III *Jurisprudencia Registral* 697; and of October 21, 1909, IV *Jurisprudencia Registral* 523.

In a judgment rendered on May 27, 1905, the Supreme Court of Spain stated, upon referring to the community character of the buildings constructed on land belonging separately to one of the spouses, that once the conjugal partnership is dissolved *the buildings may or may not be community property,* depending on the result of the liquidation of the partnership, for that is the proper time for determining the profits, if any remained, after paying the partners and the creditors.

The construction, during the marriage, of a building on land belonging separately to one of the spouses changes the legal status of the property. But that fact must be fully justified either by circumstances extraneous to the Registry

—such justification being sufficiently implied from the authentic statements of the spouses—or derived from the entries in the Registry itself. Decision of the General Directorate of Registries of July 15, 1918, V *Jurisprudencia Registral* 218.

The aforesaid doctrine which deals with the power of the surviving spouse to dispose of his or her own property, after the dissolution of the conjugal partnership but before its liquidation, equally governs the power of the assigns of the deceased to dispose of their own property, the liquidation of the partnership *being required* only upon proof, for the purpose of the Registry, that useful expenditures were made in the separate property of one of the spouses with money or income of the conjugal partnership, or that a building was erected on land belonging to one of the spouses.

In the present appeal there is nothing in the record to show that it appeared from the Registry or from facts extraneous to the Registry that any useful expenditures had been made or any buildings constructed which should be regarded as community property. Under such circumstances, the legal status of the property, as separate property, has not changed, and consequently, that part of the Registrar's note subjecting the property in question "to the result of the liquidation of the conjugal partnership," is not justified, 9 Manresa, *Código Civil Español*, 590, 591, 5th ed., and it is equivalent to an undue restriction on the power of disposal of those persons who, having the same rights as their predecessor, could alienate without waiting for the result of that liquidation.

The note appealed from will be reversed insofar as the record is made "subject to the result of the liquidation of the conjugal partnership."